**GRACE CO. v. WILLIAMS et al.**
No. 11026.

Circuit Court of Appeals, Eighth Circuit.
April 22, 1938.

Wilfred Wimmell, of Kansas City, Mo. (M. W. Borders, Jr., and William E. Kemp, both of Kansas City, Mo., on the brief), for appellant.

Clif Langsdale, of Kansas City, Mo. (Roy W. Rucker, of Kansas City, Mo., on the brief), for appellees.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is a suit in equity in which the appellant as plaintiff below sought a temporary and a permanent injunction enjoining defendants from committing certain alleged acts of violence which it is alleged interfered with the pursuit of plaintiffs' business. On the filing of the complaint a temporary restraining order issued. Defendants' motion to dissolve the temporary restraining order and dismiss the complaint having been sustained, plaintiff prosecutes this appeal. The parties will be referred to as they were designated in the court below.

No evidence was introduced in support of the application for temporary restraining order. It appears from the amended complaint that plaintiff is a Missouri corporation engaged in the manufacture, sale, and distribution of garments for infants and children in Kansas City, Mo. Approximately 50 per cent. of the raw materials from which said garments are manufactured is purchased outside of the state of Missouri and is transported to plaintiff in interstate commerce. More than 80 per cent. of all the products manufactured by plaintiff is sold to customers outside of the state of Missouri and transported by plaintiff to points outside of the state in interstate commerce. Interruptions of the sale of the manufactured goods and merchandise of plaintiff by defendants materially burdens, obstructs, and interrupts interstate commerce and materially burdens, obstructs, and interrupts the free flow of the manufactured goods from and into the channels of interstate commerce, and materially affects the cost of manufacture and

the price of materials and goods, and causes diminution of employment and wages in such volume as substantially to impair the market for goods flowing from and into the channels of commerce. Certain of the defendants are agents and organizers or officers of the United Garment Workers of America—Local Union No. 47. A majority of the employees of plaintiff have organized a union which they have designated "The Grace Company Workers' Labor Union" and have selected seven representatives, designated as a union committee, from among their number, for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment, and other conditions of employment. The representatives of these employees have demanded and do demand the right to be recognized by the plaintiff as the exclusive representatives of all of the employees of plaintiff company for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment, and other conditions of employment. The representatives of the employees on their behalf negotiated with plaintiff for a contract between plaintiff and the Grace Company Workers' Labor Union, and on May 3, 1937, a contract between plaintiff and the Grace Company Workers' Labor Union was duly executed. This contract makes provision, among other things, as to hours of labor per week, minimum wages, and the arbitration of disputes, and further provides that all plant employees of the company, with the exception of janitors and machinists, "shall become and remain members, in good standing, of the Plant Union, and all employees of the Company who have been employed in unions other than The Grace Company Workers' Labor Union, shall become members of said Plant Union." There is no dispute between plaintiff and any of its employees, or any group of its employees, in respect to rates of pay, wages, hours of employment, or other conditions of employment.

Since May 3, 1937, defendants, their agents and servants, have picketed the premises of plaintiff's plant and have paraded in front of the plant with banners and have written upon space in front of plaintiff's place of business the following: "Van Brunt Scab Shop Grace Company."

Defendants have interfered with and molested plaintiff in the peaceful operation of its business, and have interfered with, molested, and intimidated employees of plaintiff between the time they leave their homes in the morning and enter the plant, and the time they leave the plant in the evening and reach their homes. During the times the employees are coming to and from the plant, defendants, their agents and servants, have, in numerous instances, resorted to physical violence against employees of plaintiff, and groups of defendants acting in concert and agreement among themselves and all the other defendants herein, and at remote points from the plant, waylaid employees of the plaintiff company on their way home from the plant and on their way from their homes to the plant, and in some instances have violently assaulted the employees of plaintiff and have intimidated numerous employees with threats of physical violence and have committed indignities upon them by throwing spoiled and rotten eggs at them, and by this conduct have produced in the minds of the employees a state of fear of serious personal injury at the hands of the defendants. The defendants, their agents and servants, committed all of these acts and threats of violence upon the plaintiff's employees for the purpose of preventing these employees from continuing their regular work at plaintiff's plant and for the further purpose of coercing these employees into withdrawing from the Grace Company Workers' Labor Union and coercing them into joining the United Garment Workers of America—Local Union No. 47, and for the further purpose of forcing plaintiff to recognize the defendant United Garment Workers of America, Local Union No. 47, as the exclusive bargaining agency for plaintiff's said employees. Defendants have interfered with the delivery both to and from the plant of interstate and intrastate shipments of merchandise, and in numerous instances have intimidated drivers of trucks carrying such merchandise by threats of violence into taking it away without delivering it to the plant, and, in case of outgoing shipments, have intimidated, by violence and threats of violence, truck drivers calling for same to leave without picking up such shipments, and in some instances have forcibly torn boxes, cartons, and parcels of merchandise destined for interstate shipments from trucks loaded with outgoing shipments of merchandise. Defendants have interfered with the peaceful operation of plaintiff's business by padlocking the entrance to the plant and thus attempting to prevent the free ingress and egress of plaintiff's employees and other persons having business with the plaintiff. All of these acts were

performed and committed by defendants acting in a conspiracy among themselves, with the intent to interfere with the free flow of shipments of goods from points outside the state of Missouri to the plant of the plaintiff and shipments of goods from the plant of the plaintiff to points outside of the state of Missouri, and with the intent to interfere with the free flow of commerce among the states, and the defendants have actually interfered with the movements and shipments of goods and merchandise in interstate commerce.

Plaintiff is not permitted to deal with defendants, nor with any labor organization, or with representatives of labor, other than those representatives selected by the majority group of employees of the plaintiff, who have organized themselves into what they have designated as "The Grace Company Workers' Labor Union." Plaintiff is dealing with the representatives of the Grace Company Workers' Labor Union, and the dealings between the plaintiff and these representatives are entirely satisfactory to all. The majority of all of the employees of the plaintiff desire to be represented and demand the right to be represented by their representatives which they have chosen, and they do not wish to be represented and refuse to be represented by the defendants, or any of them, or by the business agents or organizers of the defendant United Garment Workers of America—Local Union No. 47.

It is also alleged that the amount or value involved exceeds the sum of $3,000.

It is asserted on this appeal that the court erred in sustaining defendants' motion to dismiss plaintiff's amended complaint and in sustaining their motion to dissolve the temporary restraining order. As forecast, the order appealed from did two things. It dissolved the temporary restraining order that had been issued upon the filing of the complaint, and it dismissed plaintiff's complaint, presumably for want of equity.

In the lower court, as here, the controversy largely centers about the applicability of the Norris-LaGuardia Act, 29 U.S.C.A. §§ 101–115. It is the contention of plaintiff that it has no application, while defendants contend that it is determinative of the issues involved. It has been the contention of plaintiff that the Norris-LaGuardia Act was not applicable because there was no labor dispute involved. Subdivision (c) of section 13 of the act, 29 U.S.C.A. § 113(c), provides that: "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

In view of the opinions in Lauf et al. v. E. G. Shinner & Co., Inc., 58 S.Ct. 578, 582, 82 L.Ed. ——, filed February 28, 1938 and in New Negro Alliance et al. v. Sanitary Grocery Co., Inc., 58 S.Ct. 703, 82 L.Ed. ——, filed March 28, 1938, any discussion of this question under the facts as disclosed by the complaint would be more or less academic. On the authority of these decisions we are of the opinion that a labor dispute was involved in this suit.

Section 107, title 29 U.S.C.A. provides that: "No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—"

So far as the temporary restraining order is concerned it is unnecessary to consider what facts the court must find as a basis for issuing such order because it affirmatively appears that the order in the instant case was issued without hearing any testimony and without making any findings. The temporary restraining order was therefore improvidently granted, and the court was right in dissolving it.

The fact that plaintiff was not, under the showing made, entitled to a temporary injunction, does not necessarily preclude plaintiff's contention that the complaint stated facts which if proven would have entitled it to a permanent injunction.

The Norris-LaGuardia Act does not forbid the granting of injunctions in all cases of labor disputes; in fact, it clearly contemplates that injunctions may be granted in such cases. Sections 101, 104, 105, 107, 108, 109, 110, title 29 U.S.C.A. Federal courts are specifically forbidden to issue any restraining order or temporary or permanent injunction in any case involving or

growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute from doing certain specified acts. Subdivision (d), § 104, title 29 U.S.C.A. The specific character of these acts is not here material, except that it should be observed that acts of fraud and violence are not given legislative sanction.

In the report of the Senate Committee, concerning the scope of the act, it was said: "It is not sought by this bill to take away from the judicial power any jurisdiction to restrain by injunctive process unlawful acts, or acts of fraud or violence."

In explaining the act before the House of Representatives, the sponsors said:

"Gentlemen: This bill does not—and I cannot repeat it too many times—this bill does not prevent the court from restraining any unlawful act. * * *

"Contrary to the belief of some people, this bill does not attempt to take away from the Federal courts all power to restrain unlawful acts or acts of fraud or violence in labor disputes.

"The public is amply protected as the bill is now drawn. It is a mistaken notion that some have that all injunctions are proscribed. There is still left to the Federal courts the right to issue injunctions when there are unlawful acts threatened or committed, when substantial and irreparable injury to complainant's property is done —and when there is no adequate remedy at law in all those cases, the Federal courts will still have the right to issue injunctions. When there is fraud, when there is violence, and when there is crime injunctions may issue. When any of those things are threatened or committed injunctions may ensue."

Referring to these reports the Circuit Court of Appeals of the Seventh Circuit, in United Electric Coal Companies v. Rice, 80 F.2d 1, 9, among other things, said: "Every reason would seem to support the position taken by the sponsors of this Act. Refusal to protect property from wilful destruction by others is so contrary to our individual and collective sense of justice that it is quite impossible to extend the meaning of language so as to exclude such protection without affirmative and specific words to that effect."

It is observed too that in the Lauf Case, supra, the cause was remanded to the District Court for further proceedings, and in remanding it Mr. Justice Roberts said: "Since the courts below were of opinion that a labor dispute, as defined by state and federal statutes, had not been shown, they did not pass on the questions of the legality, under the Wisconsin law, of the acts charged to have been done by the petitioners or the constitutionality of that law in legalizing any of such acts. As the case must go back for further proceedings, we express no opinion upon these questions."

But in view of the limitations placed upon the jurisdiction of the federal courts to issue temporary restraining orders or permanent injunctions in a suit involving a labor dispute, it was incumbent upon plaintiff to disclose by affirmative allegations of its complaint that it was entitled to invoke the equitable jurisdiction of the court.

■■ Section 107, title 29, U.S.C.A., forbids the issuance of either injunction or temporary restraining order, except after findings of fact by the court to the effect, among other things, "That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection." The act contains other requirements as to specific findings of fact. As to these, it is contended by plaintiff that, upon hearing on the merits, the basis for such findings may be established by the evidence. But if the finding of these specific facts is essential, then they must be responsive to some allegation in the complaint, and, without such allegation, proof in support of them would clearly be inadmissible.

The lower court dismissed the complaint for the reason that it did not "undertake to allege a compliance with the requirements of the Norris-LaGuardia Act," D.C., 20 F. Supp. 263, 270 and not on the ground that the court was impotent to grant injunctional relief against unlawful acts of violence and intimidation by the defendants which federal legislation has not attempted to remove from the power of a court to prevent.

We are of the view that the plaintiff's complaint was properly dismissed because it did not state facts sufficient to entitle the plaintiff to the relief demanded. The order appealed from is therefore affirmed.