CONSOLIDATED AIRCRAFT CORPORATION v. NATIONAL LABOR RELATIONS BOARD.

No. 10389.

Circuit Court of Appeals, Ninth Circuit.

March 17, 1944.

Pruitt, Hale & Coursen, of New York City (Royal E. T. Riggs, of New York City, and Harris G. Nelson, of San Diego, Cal., of counsel), for petitioner.

Howard Lichtenstein, Asst. Gen. Counsel, N. L. R. B., Richard A. Perkins, Helen F. Humphrey, and Malcolm F. Halliday, Attys., N. L. R. B., all of Washington, D. C., for respondent.

Before WILBUR and STEPHENS, Circuit Judges, and McCORMICK, District Judge.

STEPHENS, Circuit Judge.

The National Labor Relations Board, herein called the Board, issued a cease and desist order to Consolidated Aircraft Corporation, herein called the Company (§ 10 (c), N. L. R. Act, 49 Stat. 449, 29 U.S.C.A. § 160(c)). The Company asks us to set the order aside and the Board asks us to enforce it.

The Board found that the Company had violated § 8(1) of the Act, 29 U.S.C.A. § 158(1): "It shall be an unfair labor practice for an employer—(1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." Section 7 of the Act, 29 U.S.C.A. § 157, hereinafter referred to as § 7, is as follows: "Right of employees as to organization, collective bargaining, etc. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection. July 5, 1935, c. 372, § 7, 49 Stat. 452."

The Company admirably states the case in a paragraph of its brief which we quote. "The case presents for determination the question whether the acts and statements of the Company made subsequent to an agreement of collective bargaining already entered into with representatives of its employees, did, in fact or in law, amount to an *interference* with, *restraint* of, or *coercion* of the Company's employees in the exercise of the rights guaranteed under Section 7." [Emphasis added.]

*Suspension and Resumption of Interim Wage Changes.*

There is a provision in the collective bargaining contract as follows: "In accordance with past practice, the Company will

approve interim individual increases when justified, after consulting the Foreman and the Union Committeeman of the Department concerned."

█ In the latter part of 1941 the Company, without consultation with the Union, gave notice that no further interim increases would be granted until April, 1942. The union regarded this as violating the contract, whereupon the Company withdrew the notice. Perhaps there was room here for difference of opinion as to whether or not the Company's action in giving the notice was within the contract. If it may be so held, it typically illustrates an ordinary difference between the parties to the contract upon the meaning of the contract and comes under the announced policy of the Board that it will not attempt to resolve such differences. On the other hand it cannot be that the employer may violate the terms of the collective agreement either through intention or carelessness with impunity relying upon the ready excuse of interpretation. Whether or not an action by the employer is to be regarded as a violation of the statute or merely as the employer's interpretation of the contract in good faith and upon reasonable ground is within the determination of the Board. We can disturb such determination only in case the Board has acted arbitrarily and without substantial evidence to support its action.

█ If the matter of interim wage increases had not been further complicated, the Board might have held that the notice of suspension of wage increases was the result of misinterpretation of the contract and have declined to hold it a violation of § 7. It was, however, further complicated by Company action shortly after the withdrawal of the notice by the granting of wage increases without consultation with Union officials. This matter was adjusted. But the right of collective bargaining is wholly inconsistent with unilateral company action affecting matters within the scope of the agreement and adjustments following repeated violations do not satisfy the intent of the Statute.

█ We hold the situation as above revealed supports a finding that employee rights as provided in § 7 as to collective bargaining have been interfered with.

### The Blackout Effort.

Within the week following the treacherous attack upon the United States by the government of Japan on the 7th day of December, 1941 (commonly referred to as "Pearl Harbor"), there was patriotic activity and cooperation of Company employees and Company management to blackout the skylights and windows of the Company buildings so that the production of planes could go forward uninterruptedly and under lessened danger of bombing then believed to be a very real danger.

It is evident that the relation of employer and employee was disregarded in the uplifting emotion of patriotism and that the workers and company management recognizing the emergency proceeded cooperatively to prepare such defense against attack as was open to them. In the nature of things they were not scrupulous in acting strictly in accord with the terms of the collective bargaining contract. Immediately the acute emergency passed, satisfactory adjustments were made.

█ The evidence does not support a finding that any right guaranteed by § 7 has been violated.

### Base Pay of Crane Operators.

A dispute arose over the base pay of crane operators, and the Union requested that this dispute should be settled through the arbitration provision of the contract. The Company declined to take this course holding that there was nothing to arbitrate. A settlement was later made through the intervention of a Department of Labor Conciliator.

█ We hold that there was evidence upon this item to support a finding that a right guaranteed by § 7 had been violated in that collective bargaining had been interfered with.

### The Third Shift Controversy.

In changing from a two-shift operation to one of three shifts, the third shift was required to begin its six day work-week at midnight Monday. The work-week therefore terminated Sunday morning. The Union contends that these workers, under the terms of the contract, are entitled to double time for the hours they worked on Sunday. There was agreement between the Union and the Company that the workers of this shift should receive an eight-cent differential for night work and eight hours pay for six and a half hours actual work. It was the Company's view that this wage and hour agreement was complete and that double time was not to be paid for the Sunday work. The Company rep-

resentative expressed himself as being "unable to read this interpretation [the Union's] into the agreement."

There is nothing in the evidence to cast any doubt upon the good faith of either party in this disagreement. The contract provides for arbitration in proper cases of differences and the disagreement seems to fall squarely within this provision.

■ We hold as to this item that the Company has violated no right guaranteed by § 7.

### Job Classification.

■ There is a controversy in this proceeding concerning "job classification." We take judicial knowledge of the vast expansion of the Company plant and the great material changes which must have taken place affecting this item of the complaint since it arose in the Spring of 1942. At most this item could but be held to have violated § 7 as an interference of collective bargaining. Since we have found this violation under several other portions of the complaint, we refrain from expressing an opinion upon this item. As further justification for this we wish to say that the extent of the National War Labor Board's jurisdiction in this field has not been adequately briefed, and we do not deem it useful to cause reargument and further delay in the disposition of this proceeding now so long delayed that the remedial feature of the order may well be heavily discounted.

### The Employees Hired Outside California.

There is an item of complaint regarding employees hired outside the State of California. We think the Board's statement in its brief satisfactorily covers the point. "Because of the labor shortage in the area of its operations, petitioner hired a number of employees outside the State of California at agreed rates and job classifications. Upon their arrival in San Diego, petitioner reduced the wages or job classifications of 21 or 22 of them without previous notice to or consultation with the Union which represented them * * *. When the Union sought to take up these cases as grievances, Labor Relations Director Wiseman [1] refused to take any action on them * * *. It was not until after intervention by a Department of Labor Conciliator that petitioner reconsidered its action and made a compromise adjustment of these cases * * *."

■ We hold that the Company's action constituted an interference with the right of collective bargaining as defined in § 7 of the Act.

### Adverse Treatment for Union Activities.

■ There are several instances in the evidence wherein men within the Company management threatened adverse treatment because of Union activities. The evidence is plain and if believed by the Board supports the Board's findings that the rights of employees have been interfered with and that employees have been coerced in their right to self-organization and to assist labor organizations as guaranteed by § 7.

### Decision.

The cease and desist part of the order is as follows: "1. Cease and desist from in any manner interfering with, restraining, or coercing its employees in the exercise of the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purposes of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the Act."

■ This paragraph is too broad and too inclusive, and it is hereby amended to read as follows: "1. Cease and desist from in any manner interfering with or coercing its employees in the exercise of the right of self-organization and to assist labor organizations. Cease and desist from interfering with its employees in the exercise of the right of collective bargaining."

The order as changed by this amendment is hereby ordered enforced. The petition to set the order aside is denied.

---

[1] Wiseman was the Company's representative.