UNITED PACKING HOUSE WORKERS OF AMERICA et al. v. WILSON & CO., Inc.

Civ. 48C631.

District Court, N. D. Illinois, E. D.

July 2, 1948.

Jean M. Boardman, of Washington, D. C., for plaintiff.

Beatrice A. Clephane, of Washington D. C., for defendant.

Elson & Cotton, of Chicago, Ill., for plaintiffs.

Richard C. Winkler, Jas. D. Cooney, Thomas Freeman, and Paul Ware, all of Chicago, Ill., for defendant.

IGOE, District Judge.

This is an action by the United Packing House Workers of America, (herein referred to as the International Union) an unincorporated association, local unions and a number of individuals against Wilson & Company for a temporary and permanent injunction restraining defendant "from failing and refusing to give full force and effect to the terms and conditions of the collective bargaining contract between defendant and the plaintiff International Union"; from denying to any employee vacation rights, sick leave payments, seniority rights, or any other benefits to which any such employees are entitled under the terms of said contract; from failing to deduct or remit dues; from failing to process grievances under the terms of said contract; and for "such damages as have been sustained as a result of the defendant's conduct and such additional damage as may occur subsequent to the filing of this amended complaint."

The defendant filed a motion to dismiss the complaint as amended upon a number of grounds, which can be summarized as follows:

(1) That this Court has no jurisdiction of the subject matter in that section 301(a) and (b), 29 U.S.C.A. § 185(a, b), did not confer jurisdiction upon district courts to grant private parties injunctive relief and that exclusive jurisdiction of the matters alleged is vested in the National Labor Relations Board by the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq.; (2) that this Court is prohibited by the Norris-LaGuardia Act from granting injunctive relief for the reasons that plaintiffs failed to comply with Sections 8(d) and 9(f) (g) and (h) of the Labor Management Relations Act and that the complaint lacks the necessary factual allegations which will enable this Court to make the necessary findings prescribed in Section 7 of the Norris-LaGuardia Act, 29 U.S.C.A. § 107; (3) that the complaint

does not allege the necessary Federal jurisdictional requirements of diversity of citizenship and jurisdictional amount; (4) that this Court cannot grant relief for the reason that the complaint shows on its face that plaintiffs, without legal justification, have repudiated and breached the agreement of December 20, 1946, that defendant has not waived said breach by plaintiffs thus relieving defendant from performing under the contract; and (5) that plaintiffs have come into equity with unclean hands.

Plaintiffs bring this action "under the provisions of Section 301(a) and 301(b) of the Labor Management Relations Act, 1947, Public Law 101, 80th Congress, June 23, 1947" and "in the alternative this action is brought in this court because of the diversity of citizenship of the plaintiffs and defendant."

Briefly, plaintiffs allege that the International Union entered into a collective bargaining agreement with the defendant on December 20, 1946, which was to "remain by its terms in full force and effect until August 11, 1948"; that the contract provided for a reopening to negotiate solely on the issue of general wages; and that the contract was opened for adjustment of wages on December 19, 1947. In the original complaint it is alleged that "at all times since December 19, 1947, defendant has failed and refused, and continues to fail and refuse to engage in collective bargaining in good faith for the purposes of settlement and adjustment of the issue of a general wage adjustment." In the amended complaint it is alleged that "representatives of plaintiff International Union met with the defendant and attempted to engage in collective bargaining for the purpose of arriving at an agreement on the issue of a general wage adjustment." Plaintiffs further allege that on March 16, 1948, the employees of defendant went out on strike, which strike was in full force and effect between March 16, 1948 and June 5, 1948.

The complaint recites a series of five alleged violations of the contract by the defendant during and since the strike, relating to a failure to pay sick benefits, a failure to grant striking employees vacations with pay, a failure to abide by seniority provisions, a refusal to adjust grievances, and a failure to deduct and pay over dues to the union.

Plaintiffs further allege that defendant has engaged in the acts of contract violation and threatens and intends to continue such acts and to engage in other acts of contract violation wilfully and intentionally with full knowledge of the illegality of its conduct and for the purpose of injuring plaintiffs.

In the original complaint, plaintiffs allege that conduct in addition to other injurious damage has been and will be inflicted "upon the plaintiffs through the impairment of the mental, moral and organizational strength of the employees of the defendant." In the complaint as amended plaintiffs allege that "further and additional damage has been inflicted, is being inflicted and will be inflicted upon the plaintiffs through the impairment of the morale and organizational strength of the employees of defendant."

■ It is clear from the complaint as amended that all things complained of by plaintiffs arise out of a labor dispute originating with plaintiff International Union's demand for a wage adjustment which resulted in a strike called by plaintiffs March 16, 1948, which was terminated June 5, 1948. The gravamen of the complaint is that defendant committed unfair labor practices.[1] The relief sought (aside from the incidental damages) is that defendant be enjoined from committing such unfair labor practices.

Defendant's motion to dismiss immediately presents the question whether the District Court has jurisdiction to grant injunctive relief on petition of private parties in a labor dispute.

Beginning with the passage of the Norris-LaGuardia Act in March 1932, 47 Stat. 70, 29 U.S.C.A. § 101 et seq., the Congress instituted the National policy of limiting

---

[1] Consolidated Aircraft Corp. v. N.L.R.B., 9 Cir., 141 F.2d 785, 787, 788; Republic Steel Corp. v. N.L.R.B., 3 Cir., 114 F.2d 820, 821, modified on another point, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6.

the jurisdiction of the District Court in such cases. The purpose and effect of that legislation was to deprive the federal courts of jurisdiction to interfere by injunction with labor disputes except in a very limited class of cases. The complaint as amended does not fall within the class excepted. Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 167 F.2d 183, 186; Milk Wagon Drivers' Union, Local No. 753 etc. v. Lake Valley Farm Products, 311 U.S. 91, 101, 61 S.Ct. 122, 85 L.Ed. 63; Stanley v. Peabody Coal Co., D.C.S.D.Ill., 5 F. Supp. 612; Wilson & Co. v. Birl, 3 Cir., 105 F.2d 948; Grace Co. v. Williams, 8 Cir., 96 F.2d 478.

The National Labor Relations Act of July 5, 1935, 49 Stat. 449, 29 U.S.C.A. § 151 et seq., still further limited the jurisdiction of Federal Courts over labor disputes. The act established a single paramount administrative authority for the redress and prevention of unfair labor practices on the part of employers and under its terms Federal District Courts are without jurisdiction to redress by injunction or otherwise the unfair labor practices which it defined. Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 167 F.2d 183, 186; Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 48, 49, 58 S.Ct. 459, 82 L.Ed. 638.

It is clear, therefore, that this Court has no jurisdiction of this case, unless the Labor Management Relations Act of June 23, 1947, 61 Stat. 136, 29 U.S.C.A. § 141 et seq., has had the effect of conferring such jurisdiction upon it.

Subsections (a) and (b) of Section 301 of the Labor Management Act 1947 provide:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"(b) Any labor organization which represents employees in an industry affecting commerce as defined in this Act and any employer whose activities affect commerce as defined in this Act shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets."

There is nothing in either the text or the legislative history of the Labor Management Relations Act of 1947 to indicate any intention on the part of Congress of conferring jurisdiction on Federal trial courts in labor disputes, except to the limited extent that such jurisdiction was expressly conferred. Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 167 F.2d 183. It is also clear that Congress did not intend, either by expression or by necessary implication, that private parties should have a right to injunctive relief even as an ancillary remedy in the permitted suit for damages. International Longshoremen's & Warehousemen's Union v. Sunset Line & Twine Co., D.C., 77 F.Supp. 119, 122.

The Act expressly confers jurisdiction on the District Court to issue injunctions in certain specified cases. Under Section 10(j) of the Act the District Courts are expressly given jurisdiction to grant injunctions upon petition of the Board after the latter has issued a complaint charging an unfair labor practice; under Section 10(l) the District Courts are given jurisdiction to grant injunctions upon petition of an officer or the regional attorney of the Board in certain cases involving jurisdictional strikes and secondary boycotts; under Section 208 the District Courts are authorized to enjoin strikes and lockouts affecting a substantial part of interstate commerce and imperiling the national health or safety regardless of the provisions of the Norris-LaGuardia Act, but only upon the petition of the Attorney General following a report of a board of inquiry and direction by the President; and under Sec-

tion 303 the District Courts are given jurisdiction of suits for damages arising out of jurisdictional strikes and boycotts.

■ Having thus expressly designated specific circumstances under which Federal District Courts may issue injunctions in labor disputes, it is clear that Congress did not intend by Section 301(a) and (b) of the Act to confer jurisdiction upon Federal trial courts to grant injunctive relief on petition of private parties in a labor dispute.

■ It is clear from the legislative history of the Labor Management Relations Act of 1947 that the purpose, among other things, of its Congressional sponsors was to equalize the National Labor Relations Act so that it would no longer be "one-sided" (H.Rep.No.510, S. 1126, 80th Cong. 1st Sess. p. 31). Section 8(b) defines unfair labor practices by Unions. Section 8(d) makes collective bargaining contracts equally binding and enforceable on both parties and "continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later."

Section 301 is a necessary part of the Act to make it "two-sided." As pointed out in Senate Report 105, S. 1126, 80th Cong., p. 15–18, prior to the enactment of this Section "the initial obstacle in enforcing the terms of a collective agreement against a union which has breached its provisions is the difficulty of subjecting the union to process. The great majority of labor unions are unincorporated associations. At common law voluntary associations are not suable as such." Thus subsection (d) together with subsection (b) makes unions effectively suable as entities. Subsection (d) provides that "the service of summons, subpoena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization." Subsection (b) eschews the rule for determining the existence of an agency relationship established by Section 6 of the Norris-La-Guardia Act. Subsection (b) states that "Any labor organization * * * shall be bound by the acts of its agents." Subsection (e) provides that "For the purposes of this section, in determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling."

The purpose and effect of subsections (b) (c) (d) and (e) of Section 301 was manifestly to make clear the capacity of labor organizations to come or be brought into court as parties; to provide where a labor organization can sue or be sued; to specify the manner of service upon a labor organization; and to define an "agent"; but not to enlarge the class of cases of which the District Courts were given jurisdiction.

· The purpose and effect of subsection (a) is to confer on the District Courts jurisdiction in suits for damages between employers and labor organizations for violation of contracts.

Senator Taft, a sponsor of the Act, in presenting the Conference Report to the Senate, submitted a detailed summary of the principal differences between the conference bill and the one passed by the Senate. As to Section 301, which was taken from the Senate bill (S. 1126, 80th Cong. 1st Sess.) he said (Cong.Rec. June 5, 1947, page 6600): ' "* * * The provisions of the Senate amendment which conferred a right of action for damages upon a party aggrieved by breach of a collective bargaining contract, however, were retained in the conference agreement (Section 301)."

It will be seen from the legislative history set forth in Judge Parker's opinion, 167 F.2d 183, at pages 188, 189, that Congress intended to exclude private parties (unions and employers) from the injunctive remedy. See also "The Taft-Hartley Act in Action" by Thomas R. Mulroy, (Spring 1948, No. 3) 15 Univ.Ch'go L. Rev. 595, 609. International Longshoremen's & Warehousemen's Union v. Sunset Line & Twine Co., D.C.N.D.Cal., 77 F.

Supp. 119; Gerry of California v. International Ladies' Garment Workers' Union, (Super.Ct.Los Angeles Co.) 14 C.C.H.Lab. Cas. par. 64,260. Cong.Record April 30, 1947, p. 4411; Cong.Record May 9, 1947, p. 5065.

Plaintiffs, by their amended complaint, attempt to characterize the unfair labor practices complained of as "contract violations" and thereby circumvent the plain mandate of Congress that jurisdiction of such matters be vested exclusively in the National Labor Relations Board and that Federal trial courts are without jurisdiction to redress by injunction or otherwise unfair labor practices.

If, for the purpose of argument, the Court adopted the theory attempted to be advanced by the amended complaint that the things complained of are "contract violations" and are only coincidentally unfair labor practices as defined by the Labor Management Relations Act of 1947, this court does not have jurisdiction to grant injunctive relief in this case. Compare, Stanley v. Peabody Coal Co., D.C. S.D.Ill., 5 F.Supp. 612.

Wholly aside from the fact that Sec. 301(a) and (b) of the Labor Management Relations Act of 1947 does not confer jurisdiction upon the Federal District Court to grant injunctive relief on petition of private parties (International Longshoremen's & Warehousemen's Union v. Sunset Line & Twine Co., D.C.N.D.Cal., 77 F. Supp. 119, 121, 122), the Norris-LaGuardia Act deprives this court of jurisdiction to grant the injunction prayed for.

This is a labor dispute as defined by that Act. 29 U.S.C.A. § 113(c); Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 167 F.2d 183; Stanley v. Peabody Coal Co., D.C., 5 F.Supp. 612.

The complaint fails to allege facts that show compliance with Section 8 of that Act. 29 U.S.C.A. § 108; Brotherhood of Railroad Trainmen, et al. v. Toledo, Peoria & Western R., 321 U.S. 50,

64 S.Ct. 413, 88 L.Ed. 534, 150 A.L.R. 810. On the contrary, the complaint shows on its face that plaintiffs, by "resorting to a strike" on March 16, 1948 and before the "expiration date of such contract," have violated the express mandate of Section 8(d) of the Labor Management Relations Act of 1947. Plaintiffs contend that their contract gave them the right to strike during its term. After the passage of the Labor Management Relations Act of 1947, such a contention would be contrary to the express policy of the Act and Section 8 thereof. Contracts, however express, cannot fetter the constitutional authority of Congress. Norman v. Baltimore & Ohio R. R. Co., 294 U.S. 240, 307, 55 S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352. Furthermore, the plaintiff unions. and their officers have failed to allege that they have filed the documents with the Secretary of Labor required by Section 9(f) and (g) of the Act and failed to allege that their officers filed with the N.L.R.B. the non-Communist Party affidavits required by Section 9(h).[2] Finally, in connection with the requirement of Section 8 of the Act, it is a matter of common knowledge which this Court shares with the general public, (Amos v. Mosley, 74 Fla. 555, 567, 77 So. 619, L.R.A.1918C, 482; Stanley v. Peabody Coal Co., D.C., 5 F.Supp. 612, 618) that plaintiffs and their members conducted the strike with such utter disregard of their obligations under the law that it was necessary for the Governors of Minnesota and Iowa to call out their Militia to protect the lives and property of their citizens.

Moreover, the complaint as amended alleges no facts from which the Court could make the specific findings of fact required by Section 7 of the Act, without which injunctive relief is prohibited. Grace Co. v. Williams, 8 Cir., 96 F.2d 478; Wilson v. Dias, D.C.Pa., 72 F.Supp. 198; Wilson & Co. v. Birl, 3 Cir., 105 F.2d 948. The nearest approach to charging "that unlawful acts have been threatened and will be committed unless restrained" is the

---

[2] Defendant showed by affidavit that none of plaintiff unions had complied with Section 9 when the original complaint was filed on May 6, 1948. On June 25, 1948, plaintiff showed by affidavit that only the International Union, which had contracted on behalf of its local unions, and its officers had filed belatedly on June 16, 1948, the documents and affidavits required by Section 9(f), (g) and (h).

charge that contract violations which are unfair labor practices have been committed. Such allegations are not "unlawful acts" within the meaning of Section 7 of the Act. Wilson & Co. v. Birl, 3 Cir., 105 F.2d 948. Nor are there any allegations to support the necessary findings "that the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection." These words mean that the Court may step in only where the police cannot or will not do their job of protecting physical property. The Act takes this executive function out of the Court, and leaves it to the appropriate executive officers unless they fail to function. Grace Co. v. Williams, 8 Cir., 96 F.2d 478; Wilson v. Dias, D.C., 72 F.Supp. 198. There is nothing in the complaint to show that the National Labor Relations Board could not effectively prevent all the Acts which plaintiffs seek to enjoin.

■ Likewise, the Court would be unable to find "that complainant has no adequate remedy at law." On the contrary it is clear that the National Labor Relations Board and the Circuit Court of Appeals under the Labor Management Relations Act of 1947 can effectively give plaintiffs all the relief that this court could grant by injunction.

■ There are no allegations of fact in the complaint as amended which would support a finding that as to each item of relief granted greater injury will be inflicted upon plaintiffs by the denial of relief than will be inflicted upon defendants by the granting of relief. If the plaintiff can plead and establish a claim for damages growing out of a breach of its contract, Sec. 301(a) of the Labor Management Relations Act of 1947 confers jurisdiction upon this court to hear and determine such a suit.

In view of my conclusions, it is not necessary to consider further the points raised in defendant's motion to dismiss.

Defendant's motion to dismiss the complaint as amended is sustained and plaintiffs' motion for a preliminary injunction must necessarily be denied.