## WILSON & CO. v. BIRL et al.
### No. 7022.

Circuit Court of Appeals, Third Circuit.
July 10, 1939.

Wm. A. Schnader, and Joseph S. Conwell, both of Philadelphia, Pa., Paul Ware, and Marshal Wiedel, both of Chicago, Ill., and Gilbert W. Oswald, of Philadelphia, Pa. (Pepper, Bodine, Stokes & Schoch, of Philadelphia, Pa., of counsel), for appellant.

Wm. A. Gray, of Philadelphia, Pa., for appellee Local No. 107.

Albert J. Bader, of Philadelphia, Pa., for appellee Local 18571.

Louis F. McCabe and William J. O'Brien, both of Philadelphia, Pa., for appellee Local 195.

Before MARIS, CLARK, and BIDDLE, Circuit Judges.

BIDDLE, Circuit Judge.

This is an appeal from an order of Judge Kirkpatrick denying a temporary injunction against the officers and agents of three labor unions. The question involved is whether the trial judge had power to issue the injunction under the provisions of the Norris-LaGuardia Act.[1]

The appellant, Wilson & Co., is engaged in the wholesale meat business, with a plant in Philadelphia, where it processes and stores meat, shipped to it in interstate commerce, and sells twenty-five per cent of its products in interstate commerce. There are three unions involved as defendants. Local 195, the meatcutters, includes all but five of appellant's production and maintenance employees. Local 107, the truckers, has all appellant's truckers; and the members of Local 18571 are the employees of a cold storage warehouse where appellant stores its products. On December 29, 1938, the meatcutters and truckers struck on account of the employment of the five nonunion maintenance men, to force on the employer a closed shop, and have picketed Wilson's plant, and persuaded its customers not to accept deliveries of goods, threatening them with picketing, and in some instances picketing their places of business. It is clear from the record that these activities were the result of a concerted effort of the three unions to bring about a closed shop. Judge Kirkpatrick found that there had been little violence in general, and no evidence that the three or four instances of violence had been ratified. This finding is supported by the record. As a result of the unions' activities appellant's business is virtually at a standstill.

The trial judge also specifically found that appellant had complied with § 8 of the Norris-LaGuardia Act[2] requiring that an empoyer make every reasonable effort to settle a labor dispute before being entitled to injunctive relief; that, with respect to § 7 of the Act,[3] greater injury

---

[1] 29 U.S.C. §§ 101–115, 29 U.S.C.A. §§ 101–115.

[2] 29 U.S.C. § 108, 29 U.S.C.A. § 108. "Noncompliance with obligations involved in labor disputes or failure to settle by negotiation or arbitration as preventing injunctive relief. No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

[3] 29 U.S.C. § 107, 29 U.S.C.A. § 107. "No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the

would be inflicted upon the appellant by the denial of the relief asked for than upon the appellees by granting it; and that the appellant had no adequate remedy at law. Subsection (e) requires a finding that "the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection." As to this Judge Kirkpatrick said: "The picketing of the plaintiff's plant is being carried on under police supervision and control, and the police appear to have supplied protection against injury to physical property." He added that the plaintiff was not protected against loss of business with its customers. But it would be unreasonable to construe the subsection to include losses which the exercise of the powers of the police are hardly calculated to prevent. The words mean that only where the police can't or won't do their job of protecting physical property the court may step in. The act takes this executive function out of the courts, and leaves it to the appropriate executive officer, unless he fails to func-

tion. Heintz Mfg. Co. v. Local No. 515, D.C.Pa., 20 F.Supp. 116.[4] There is nothing in the record to show that the police did not have the situation under control. On this ground alone the injunction could have been refused. Knapp-Monarch Co. v. Anderson, D.C.Ill., 7 F.Supp. 332, 337.[5]

Section 7 makes one other prerequisite before an injunction can issue—that unlawful acts have been threatened or committed. Appellant argues that the acts of the union are unlawful under Pennsylvania law—striking for a closed shop, coercion of appellant's customers not to deal with it, the acts of violence (even though none were proved to have been authorized), picketing in greater numbers than calculated merely to publish the existence of the dispute. It is not necessary for us to discuss whether or not Pennsylvania law condemns these activities, although it may be pointed out that the legality of the closed shop is established by statute,[6] and the propriety of a strike to enforce it was recently recognized by our court.[7] For, as pointed out by the court

testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

"(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

"(b) That substantial and irreparable injury to complainant's property will follow;

"(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

"(d) That complainant has no adequate remedy at law; and

"(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection."

4 "That Act of Congress was based upon a recognition of the fact that the preservation of order and the protection of property in labor disputes is in the first

instance a police problem, belonging to the executive rather than the judicial side of the government, and its whole intent and purpose was to remove the courts from that field, except in cases where the peace authorities failed or refused to act."

5 "* * * it was the purpose and intent of Congress that, though all other jurisdictional and necessary facts be present, a federal court should not step in by injunction until it becomes apparent that the local authorities are actually unable or unwilling to protect plaintiff's property."

6 Pennsylvania Labor Relations Act, June 1, 1937, P.L. 1168, 43 P.S. § 211.6 (c). "* * * Provided, That nothing in this act, or in any agreement approved or prescribed thereunder, or in any other statute of this Commonwealth shall preclude an employer from making an agreement with a labor organization (not established, maintained or assisted by any action defined in this act as an unfair labor practice) to require, as a condition of employment, membership therein, if such labor organization is the representative of the employes, as provided in section seven (a) of this act, in the appropriate collective bargaining unit covered by such agreement when made." This subsection is copied, nearly verbatim, from § 8 (3) of the National Labor Relations Act, 29 U.S.C. § 158(3), 29 U.S.C.A. § 158(3).

7 Apex Hosiery Co. v. Leader, 3 Cir., 90 F.2d 155, 160, reversed on other

below, § 4 of the act, 29 U.S.C.A. § 104, enumerates certain acts not subject to injunctive relief. The test is objective; not the purpose or intent of the acts sought to be restrained, and not even their illegality; but whether they come under § 4.

This section provides that no United States Court shall have jurisdiction to enter injunctions in labor disputes to prohibit persons from doing "whether singly or in concert" certain specified acts. These acts are classified under nine subsections, (a) to (i) inclusive; but we need consider only those which are applicable to the particular activities in this case. They are:

"(a) Ceasing or refusing to perform any work or to remain in any relation of employment." A strike, therefore, cannot be enjoined. Whether or not the strike in this case is illegal, because of its purpose, as argued by appellant, is therefore beside the point. The test is no longer given the uncertain elasticity of "illegality". The statute, dealing strictly with procedure, nowhere attempts to define as lawful the acts which it says may not be enjoined. The purpose of the act to remove the jurisdiction of courts to enjoin strikes as such is emphasized in § 9 [8] which defines the manner in which the court shall make its findings. The injunction "shall include only a prohibition of such specific act or acts as may be expressly complained of in the bill of complaint * * * and as shall be expressly included in said findings of fact * * *." A strike is not the type of specific act contemplated by the exception, which looks to a particular action of an individual, whether singly or in concert with another. We are of the opinion that Federal courts may no longer issue general injunctions against striking, but only to restrain specific acts of individuals, which we shall presently discuss.

The picketing here complained of averaged 10 to 15 persons at a time, and on one occasion rose to 97. The subsections dealing with picketing, found in (e) and (f), are as follows:

"(e) Giving publicity to the existence of, or the facts involved in, any labor dispute whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;

"(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute."

Again, the uncertain test, expressed in the word "lawful" (picketing) is not employed.[9] If the picketing is peaceful, unaccompanied by acts of violence, irrespective of whether it may be mass picketing, and therefore according to appellant's argument illegal in Pennsylvania, it cannot be enjoined by a Federal court. Strikes and picketing are general acts, involving concerted efforts; the narrow limit of federal restraining power, under this act, is confined to forbidding defined acts of individuals.

It is true that the picketing ("assembling peaceably") referred to in (f) is "in promotion of their interests in a labor dispute." Obtaining a closed shop is clearly in furtherance of the interests of the strikers—an effective step towards a more cohesive and powerful organization.

Three other subsections of § 4 may be considered together:

"(g) Advising or notifying any person

grounds Leader et al. v. Apex Hosiery Co., 302 U.S. 656, 58 S.Ct. 362, 82 L.Ed. 508.

[8] 29 U.S.C. § 109, 29 U.S.C.A. § 109. "Granting of restraining order or injunction as dependent on previous findings of fact; limitation on prohibitions included in restraining orders and injunctions. No restraining order or temporary or permanent injunction shall be granted in a case involving or growing out of a labor dispute, except on the basis of findings of fact made and filed by the court in the record of the case prior to the issuance of such restraining order or injunction; and every restraining order or injunction granted in a case involving or growing out of a labor dispute shall include only a prohibition of such specific act or acts as may be expressly complained of in the bill of complaint or petition filed in such case and as shall be expressly included in said findings of fact made and filed by the court as provided herein."

[9] The provisions of the Norris-LaGuardia Act, so far as they are applicable, displace Sec. 20 of the Act of October 15, 1914, known as the Clayton Act, which amended the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1-7, 15 note. 29 U. S.C. § 52, 29 U.S.C.A. § 52. The second paragraph of this section in defining acts which shall not be restrained uses the word "lawfully" twice, and the word "lawful" three times.

of an intention to do any of the acts heretofore specified;

"(h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and

"(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this chapter."

■■ The language of these subsections, and of (e), is broad enough to include the other acts of the appellees exerted against the appellant and its customers—following its delivery trucks, and persuading its customers by threats of picketing and actual picketing to reject its goods. Where no violence or fraud is involved a district court is without jurisdiction to enjoin members of a labor union from inducing contractors and owners of buildings not to let subcontracts to members of an employers' association which favored an open shop. Levering & Garrigues Co. v. Morrin, 2 Cir., 71 F.2d 284, certiorari denied, 293 U.S. 595, 55 S.Ct. 110, 79 L. Ed. 688. As found by the trial judge, the appellees'· acts did not involve fraud or violence. Such pressure on others often loosely termed a "secondary boycott", falls within the sections and cannot be enjoined. Carrying placards stating that Wilson & Co. was unfair to organized labor may have been misrepresentative. It was not fraudulent.[10]

■ Moreover, the words "unlawful·acts" in Section 7(a), which must be alleged in the complaint and included in the findings, cannot be read separately from the rest of the section, and assume appropriate meaning only when we consider the section as a whole. Irreparable injury to the complainant's property, which has no police protection, is an essential averment and finding; and the "unlawful acts" do not constitute a general reference to anything that may be considered illegal, but specifically to the acts of violence which the authority of the executive is calculated to control.

■ When the Sherman Act was amended in 1914 by the Clayton Act, § 6 of the latter provided that labor unions should not "be held or construed to be illegal combinations or conspiracies in restraint of trade, under the antitrust laws";[11] and section 20, 29 U.S.C.A. § 52, regulated the granting of injunctions in cases between employer and employees, and exempted certain acts from restraint. The language would appear to differentiate labor unions from trade combinations, and to exclude them from the operations of the Act. Yet the decisions have emptied the words of significance other than the affirmation of what the law had been for a long time—that labor unions are not in themselves unlawful.[12] The act had little effect in narrowing equity jurisdiction in labor disputes.[13] We believe that the Norris-LaGuardia Act was adopted to prevent a similar construction.[14] The purpose

---

[10] Cinderella Theater Co. v. Sign Writers' Local Union, D.C., 6 F.Supp. 164.

[11] 15 U.S.C. § 17, 15 U.S.C.A. § 17. "Antitrust laws not applicable to labor organizations. The labor of a human being is not a commodity or article of commerce. Nothing contained in the antitrust laws shall be construed to forbid the existence and operation of labor, agricultural, or horticultural organizations, instituted for the purposes of mutual help, and not having capital stock or conducted for profit, or to forbid or restrain individual members of such organizations from lawfully carrying out the legitimate objects thereof; nor shall such organizations, or the members thereof, be held or construed to be illegal combinations or conspiracies in restraint of trade, under the antitrust laws."

[12] Stephens v. Ohio State Telephone Co., D.C., 240 F. 759.

[13] Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196; American Steel Foundries . v. Tri-City Central Trades Council, 257 U.S. 184, 42 S.Ct. 72, 76, 66 L.Ed. 189, 27 A.L.R. 360. Section 20, 29 U.S.C.A. § 52, said the court, "introduces no new principle into the equity jurisprudence of those [Federal] courts", and "is merely declaratory of what was the best practice always." Bedford Cut Stone· Co. v. Stone Cutters' Association, 274 U.S. 37, 47 S.Ct. 522, 71 L. Ed. 916, 54 A.L.R. 791.

[14] New Negro Alliance v. Grocery Co., 303 U.S. 552, 562, 58 S.Ct. 703, 707, 82 L.Ed. 1012. "The legislative history of the act demonstrates that it was the purpose of the Congress further to extend the prohibitions of the Clayton Act respecting the exercise of jurisdiction by federal courts and to obviate the results of the judicial construction of that act."

of the Act, to quote the trial judge, was "to take the Federal courts out of the business of granting injunctions in labor disputes, except where violence or fraud are present."

Judgment affirmed.