## CARTER et al. v. HERRIN MOTOR FREIGHT LINES, Inc.

### No. 10296.

Circuit Court of Appeals, Fifth Circuit.

Nov. 10, 1942.

Bentley G. Byrnes and Joseph F. Blasi, Jr., both of New Orleans, La., for appellants.

Ralph G. Holberg, Jr., of Mobile, Ala., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for an injunction. The claim was that defendants, an unincor-

porated labor union and three individuals acting as its agents, had committed, and were threatening, and would, unless restrained, continue to commit acts of violence against plaintiff and its properties, and that they had threatened and intimidated and would, unless restrained, continue to threaten and intimidate consignees and shippers with and for whom plaintiff does business in order to compel plaintiff to execute a closed shop agreement with the union. There was a prayer for temporary and for permanent injunction, and there was a temporary decree. Defendants, other than the union, moved to dismiss on the ground that the complaint shows that the injunction was sued out in connection with a labor dispute within the provisions of the Norris-LaGuardia Act,[1] and the bill of complaint fails to allege, as required by Sec. 108,[2] that complainant has made "every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration". The union moved to dismiss on the same ground and on the further ground that the bill does not allege that any of the alleged acts of violence were authorized, condoned or ratified by it. Subject to their motions, all respondents answered denying, the charges of violence and of intimidation, and that the local authorities were unable or unwilling to furnish protection, and alleging that the plaintiff had refused to discuss or negotiate a contract with defendants. There was a hearing upon notice, findings of the district judge as required by Sec. 107, and an injunctive decree.[3]

Defendants are here insisting that the decree is not supported by the findings in that there is no finding that, as required by Sec. 108 of the act, plaintiff exerted every reasonable effort to settle the dispute either by negotiation or with the aid of any available governmental machinery or voluntary arbitration. They urge too that the finding that the city and county officers are unwilling or unable to furnish adequate protection, is without support in the evidence, and that the decree is not only too general and wanting in specification, but it in effect enjoins them from doing some of the very acts specifically declared by Sec. 104 of the act to be not enjoinable.

The complaint on its face shows the existence of a labor dispute and, therefore, that the Norris-LaGuardia Act is applicable, and we are concerned here only with inquiring whether within the limitations and restrictions imposed by that act, plaintiff made out a case for injunctive relief. Appellants say it did not, because (1) the existence of a jurisdictional requirement for an injunction under Sec. 108 of the act that plaintiff made every reasonable effort to settle the dispute by negotiation, governmental mediation or voluntary arbitration was not pleaded by plaintiff, (2) it was neither proved nor found, and (3) though plaintiff pleaded, it failed to prove, that the local authorities were unwilling or unable to furnish adequate protection. In view of the fact that the case is here on appeal from a decision on the merits and that though it did not

---

[1] 29 U.S.C.A. §§ 101–115.

[2] "§ 108. Noncompliance with obligations involved in labor disputes or failure to settle by negotiation or arbitration as preventing injunctive relief.

"No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

[3] "Enjoining and restraining defendants from committing the following specific acts:

"A. Trespassing upon Complainant's property.

"B. Injuring or tampering with Complainant's property.

"C. Interfering with the Complainant's lawful pursuit of business, by following, singularly and in groups vehicles of the Complainant, while in the pursuit of lawful business, for the purpose of delaying or stopping the Complainant in its business.

"D. Discouraging the use of Complainant's services among its shippers and consignees, by interfering with deliveries of pick-ups.

"E. Intimidating or threatening consignees of Complainant in relation to services to them by Complainant.

"F. Molesting, assaulting, threatening or intimidating employees of the Complainant.

"G. Ordering, permitting or suffering members of said Local Union No. 991 to gather in large groups at or near Complainant's place of business and there engage in unlawful picketing."

plead, plaintiff made proof of, its efforts to settle the dispute, it is not necessary for us to determine whether, as Appellants contend, Section 108 makes proof regarding plaintiff's efforts to settle the dispute a part of plaintiff's case, which must, therefore, be pleaded and affirmatively found, or, as Appellee contends, a part of respondent's defense, and it need not be pleaded by, or affirmatively found in, favor of plaintiff. Cf. Milk Wagon Drivers' Union v. Lake Valley Farm Products, 311 U.S. 91, at page 96, 61 S.Ct. 122, 85 L.Ed. 63. It is sufficient here to say, that the matter of plaintiff's failure to make every reasonable effort to settle the dispute as required by Sec. 108 was an issue in the case, that the proof affirmatively shows that it did so fail, and that because it does so show, the decree may not stand. The language of the act is too plain and the decisions[4] construing it too clear cut and positive to admit of any doubt that the purpose and effect of the act, as a whole, was to give expression to, and make effective, the policy which breathes throughout it. This policy is that labor disputes, as such, with the assembling, the picketing, the persuasion, the stopping of work, the enlisting of sympathy and support, and all the other acts expressly enumerated in Sec. 104, were no longer to be the subject of injunctive action but were, and were expressly recognized to be, legitimate means for advancing the interests of the working man, and, therefore, of the people as a whole. In the light of that policy, which can be made fully effective only when there is a recognition on the part of employer and employee alike that labor disputes as such are not at all reprobated but encouraged, and only violence in connection with them is forbidden, it may not be doubted that the language of Sec. 108 means exactly what it says, when it enjoins upon an employer the positive duty of endeavoring fairly and in good faith to compose and settle labor disputes by negotiation, mediation or arbitration, and provides that no restraining order or injunctive relief shall be granted to any complainant who has failed in good faith to discharge this duty. The district judge did not affirmatively find on this issue either that plaintiff had made, or had failed to make every reasonable effort to settle the dispute. Upon the undisputed evidence,[5] he should have found that it did fail, and so finding should have denied the injunction.

Plaintiff's view on which it acted throughout was that it and the union were

[4] Lauf v. E. G. Shinner & Co., 303 U. S. 323, 58 S.Ct. 578, 82 L.Ed. 872; New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 304 U.S. 542, 58 S.Ct. 703, 82 L.Ed. 1012; Milk Wagon Drivers' Union v. Lake Valley Farm Products, 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63; Wilson & Co. v. Birl, 3 Cir., 105 F.2d 948; Cinderella Theater Co., Inc. v. Sign Writers' Local Union, 591, et al., D.C., 6 F.Supp. 164.

[5] This shows that Carter, at first Receiver, for, then Business Agent of, the union, purporting to represent it, and claiming to represent a majority of plaintiff's employees, as a part of an organizational campaign in Mobile which had increased membership in the union from some 300 to 3000 members, some two months before December 4th, had left on plaintiff's desk a couple of contracts providing for a closed shop and the check off system, and making the Union exclusive bargaining agent for plaintiff's employees. The evidence shows that plaintiff made no effort to negotiate, mediate or arbitrate the dispute raised by the action, and, according to Mr. Herrin's testimony, the following occurred:

"On December 4th, Mr. Carter walked into the office. I said 'What can I do for you?', and he said, 'I left a couple of contracts on your desk or with your man about two months ago, and you have been dodging me ever since'. I said 'No, I have not been dodging you—I just haven't been to Mobile—my agent sent me your contracts, and I looked them over, and I don't like a lot of things in the contracts, and as far as I know, none of my men have indicated to me that they have authorized you to act— to get a contract like this signed by me, —I don't feel like signing it, and I don't intend to sign it as long as my men— until my men tell me that they have asked you to bargain for them, and what I have learned from my men through my agents is that none of them has asked you to be their bargaining agent.' "

He further testified that he did not sign the contract and that Carter said that he "had a majority of my men in the Union, and asked me if I wanted him to prove it, and I said, 'Yes, I want you to prove it', and he said 'You will get proof Saturday. We will pull your men out', and I said, 'Well, if you can, maybe I will have to do something about it', and I said, 'If you do start a strike, and I don't agree with you, I would like for this thing to be conducted peacefully'.

in adversary positions and that it owed no duty to use any reasonable effort to negotiate, arbitrate or accept the assistance of a mediator in settling the dispute between them, but only the duty to treat with the union after it had furnished convincing evidence that it represented a majority of plaintiff's employees. This attitude, correct enough under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., does not satisfy the affirmative requirements of the Norris-LaGuardia Injunction Act. That act denies the equitable relief of injunction to one, who, as plaintiff did here, standing upon his legal rights, fails to use every reasonable effort by negotiation, mediation or arbitration to find a common ground for composing and settling a labor dispute. Without, therefore, determining whether it imposes a condition, compliance with which must be affirmatively alleged and found, or merely provides a defense, we sustain appellant's position that under the facts of this case, Sec. 108 of the act was a bar to granting plaintiff an injunction.

We sustain their position, too, that though pleaded and found, the facts did not support the pleading and finding, that the local authorities, whose business it was to keep the peace, could not or would not furnish adequate protection. This provision of the statute, like the one just above discussed, was not written in the act as a merely perfunctory gesture, it may not be perfunctorily complied with. It expresses the legislative conviction that acts of violence and breaches of the peace in connection with labor disputes, which, and not the disputes themselves, are enjoinable under the act, ought not to be relieved against by injunction unless the local authorities whose duty it is to keep the peace have first been resorted to, and have either advised that they could not or would not keep it or advising that they could and would, have failed through inability or unwillingness to do so. It is, therefore, of the very essence of the right to apply for injunctive relief in a federal court that the statutory allegation be made and definitely proven. Though made here, it was not proven.

To the inquiry, "Had you ever called on the chief of police?", plaintiff's president answered, "I couldn't find any chief of police in Mobile. I was told there wasn't any at that time."

"Did you ever call on the acting chief of police?" "No, I don't know who he is."

"Did you ever call on the sheriff?", "No".

"Did you ever call on the mayor?" "No, I understood from people in the town that they didn't have a mayor."

"Did you ever call on Lt. LeGear for protection?" "Yes."

"Did he give it to you?" "In front of my place."

"Did Lt. LeGear at any time refuse to give you police protection?" "No, not when he could, but he said they couldn't have the police car to follow every truck all over the City of Mobile all the time."

LeGear, who testified that he had been chief of police and acting chief of police, but was then acting under the order of the chief of police, testified also that he could furnish, and did furnish, protection and that he could, and did, keep order in front of plaintiff's place of business. To the ques-

---

I said, 'I imagine the police department would be able to take care of that', and he said, 'You need not look for any help from the police department', and he walked out of the place. That is the last statement he made."

Beyond this talk with Carter, which showed no disposition to settle the dispute over the right of the union to represent his men by mediation, negotiation, or arbitration, but only a willingness to stand upon his legal rights if Carter did not have 51 percent, the only evidence with regard to efforts of any kind made by plaintiff to settle the dispute was Herrin's testimony that he told Kenney, a mediator from Washington, that if Carter had 51 percent of his men,

he knew he would have to bargain with him. He further testified that Kenney asked him to meet Carter in a hotel room and he thought that "I would come to some agreement with Carter", and I said "Have you found out whether any of my men belong to the Union?", and he said, "Mr. Carter hasn't had time to show me", and I said, "I don't guess he has, because he has been too busy picketing me and my trucks, and I told him I was pretty busy and had been up all night the night before and I didn't propose to spend four or five hours in the hotel room arguing with Mr. Carter or him either, and that if he wanted to see me in my place of business the next day, I would be glad to talk to him".

tion, "Will you state whether the majority of the trucks were protected by policemen in scout cars or motorcycles?" he answered, "I would say that they had normal protection", and he further testified that his scout cars had two-way radios on them and could get to any given point in a very few minutes. He testified too that the City of Mobile had a mayor and chief of police, that when Mr. Herrin asked him if he could put a man on his trucks, he told him that that this was not customarily done, and he would have to take it up with the chief of police. This evidence does not support, it negatives the allegation and finding that the local authorities either could not or would not give protection.

█ It has been pointed out in numerous decisions, and as long as the statute stands unrepealed and unamended, it cannot be too often repeated by the courts, that the act was passed because, whether rightly or wrongly Congress, or at least a majority in Congress, was of the opinion, that the attitude of employers in general toward labor disputes was not only wrong, but intransigent and recalcitrant, that federal injunctions were commonly resorted to in such disputes for the purpose of obtaining backing in this attitude, and that the use of such injunctions in labor disputes, except for the limited purpose of preventing injury from violence where there was really no adequate remedy at law was an abuse of legal process. Of that opinion, they carefully and deliberately framed legislation to bring about a change of this attitude and prevent a continuance of this abuse, and set up two clear and positive barriers to the application for, and the granting of, an injunction under the old attitude and practice. These were (1) that plaintiff must before applying for an injunction, in good faith make a reasonable, sincere and honest effort to settle the dispute and (2) that no injunction should issue except where a good faith resort had been made to, and adequate protection either could not be, or was not, furnished by the local authorities. We think it too clear for argument that Plaintiff wholly failed to comply with the provision of the act requiring reasonable efforts at settlement of the dispute, and that there was no real proof of the second requisite that the authorities could not, or would not, give protection. While, therefore, we think it clear enough that the evidence supports the trial court's findings that there was violence and that the union through Carter,

who was its alter ego and who spoke and acted for it, was responsible for what was done, we think it equally clear that because of plaintiff's failure to make every reasonable effort to settle the dispute and because of the failure to prove that there was either an inability or unwillingness on the part of the local authorities to furnish protection, the injunction ought not to have issued, and the decree in its favor must be reversed. In view of the complete reversal of the decree for failure of plaintiff to state a case entitling it to an injunction, it is not necessary to consider in detail the complaints against the decree. We think we may say though that though clauses A, B, E & F are specific and definite enough and relate to prohibited acts, clauses C & D are too vague and indefinite and could be construed as prohibiting acts, which the statute allows, while clause G (forbidding "unlawful picketing") is entirely too indefinite and general and in effect puts the court in entire control of picketing operations without furnishing to those affected by the decree any guide for their conduct.

The decree is reversed, and the cause is remanded for further and not inconsistent proceedings.