**DONNELLY GARMENT CO. et al. v. DUBINSKY et al.**

**SMITH et al. v. SAME.**

Nos. 13019, 13020.

Circuit Court of Appeals, Eighth Circuit.

March 11, 1946.

---

40

William S. Hogsett, of Kansas City, Mo. (R. J. Ingraham, Burr S. Stottle, and Reed, Ingraham & Milligan, all of Kansas City, Mo., on the brief), for appellants, Donnelly Garment Co. and Donnelly Garment Sales Co.

Frank E. Tyler, of Kansas City, Mo. (Raymond E. Draper and Vera Jones, both of Kansas City, Mo., on the brief), for intervener appellants Lorraine Smith et al.

Charles A. Horsky, of Washington, D. C., and Emil Schlesinger, of New York City (Clif. Langsdale, of Kansas City, Mo., and Covington, Burling, Rublee, Acheson & Shorb, of Washington, D. C., on the brief), for appellees.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

██ This is an action for an injunction in a labor dispute in which jurisdiction of the Federal courts is narrowly circumscribed by the Norris-LaGuardia Act. 29 U.S.C.A., § 101 et seq. See United States v. Hutcheson, 312 U.S. 219, 234-236, 61 S. Ct. 463, 85 L.Ed. 788; Milk Wagon Drivers' Union v. Lake Valley Farm Products, Inc., 311 U.S. 91, 101, 102, 61 S.Ct. 122, 85 L.Ed. 63; International Association of Bridge, Structural & Ornamental Iron Workers v. Pauly Jail Building Co., 8 Cir., 118 F.2d 615, 616, 617.

The labor dispute out of which this action arose began in 1934, and from that time to the present has resulted in almost continuous proceedings before the National Labor Relations Board and in the Federal courts. The present action began in the Federal District Court for the Western District of Missouri in 1937. The history of its progress through the courts and the facts involved may be found in the opinion of the District Court from which this appeal comes (55 F.Supp. 587), in the opinions in the cases referred to by the District Court in the opinion mentioned, and in the opinions of this court in International Ladies' Garment Workers' Union v. Donnelly Garment Company, 147 F.2d 246, and in Donnelly Garment Company v. National Labor Relations Board, 151 F.2d 854. For present purposes it is enough to say that on its original appearance in the Federal District Court in 1937 the jurisdiction of the action was predicated solely upon the Sherman Act, 15 U.S.C.A. § 1 et seq. The plaintiffs and the interveners then were the same as they are now. The defendants were the International Ladies Garment Workers Union, the Kansas City Joint Board of the International, several of the International's locals, a number of its officers in their official and individual capacities, and many of its members. The action came to trial on its merits in 1939, and in April of that year the District Court entered a decree enjoining the defendants from committing the acts of fraud and violence and from conducting the illegal secondary boycott with which the defendants in the present action are charged. On appeal to this court (International Ladies' Garment Workers' Union v. Donnelly Garment Co., 119 F.2d 892) the decree of the District Court was reversed on the ground that the acts charged against defendants did not constitute a restraint of trade within the meaning of the Sherman Act. This decision was later modified on motion of plaintiffs and interveners so as to remand the case to the District Court with leave to plaintiffs and interveners to apply to that court to amend their pleadings to show jurisdiction based on diversity of citizenship and to dismiss the action as to resident defendants and the International Ladies Garment Workers Union (121 F.2d 561).

On December 10, 1941, more than four years after the beginning of the litigation, the District Court granted the motion of plaintiffs and interveners to amend and to dismiss (47 F.Supp. 61), and the case proceeded to trial. A decree denying an injunction was entered by the trial court on May 22, 1944. Plaintiffs and interveners, aligned on the same side of the controversy, have appealed.

In the action in its present form appellants are the Donnelly Garment Company and the Donnelly Sales Company, corporations domiciled in Kansas City, Missouri, and the interveners mentioned below. The Garment Company is a manufacturer of women's dresses, and the Sales Company is engaged in the sale of the product of the Garment Company. Their business is nationwide. The appellees are individuals, residents of States other than Missouri. They are officers and members of the General Executive Board of the International Ladies Garment Workers Union and the editor of "Justice," the official publication of the International. Lorraine Smith and others, members of the Executive Committee of the Donnelly Garment Workers Union, a labor organization composed of

all employees of the Garment Company eligible to membership, intervene on behalf of themselves and all other employees of the Garment Company. Prior to the institution of this action the Donnelly Garment Workers Union entered into a contract with the Garment Company concerning wages, hours of labor, and conditions of employment which is still in force.

Summarized, the charges against the appellees are: That they entered into a conspiracy among themselves and with others to compel the appellants, by violence, fraud, and illegal secondary boycott, and by threats of such unlawful acts, to accede to their demands that the Garment Company recognize the International as the sole bargaining agency of its employees, thus breaching the existing contract between the Garment Company and the employees' union, and to compel the employees of the Garment Company to become members of the International against their will, in violation of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.; that the conspiracy is a continuing one; that in furtherance of the conspiracy appellees have been guilty of fraud and violence, and that, unless restrained, acts of fraud and violence will be committed to the irreparable damage of appellants; that appellants are without an adequate remedy at law; and that the public officers whose duty it is to protect the property of appellants from the threatened unlawful acts are unable or unwilling to furnish adequate protection.

The appellees deny all allegations of the complaint.

### Violence and Threats of Violence.

The sections of the Norris-LaGuardia Act controlling upon the question of the power of the District Court to enjoin the appellees on appellants' allegations of violence and threats of violence are:

"Sec. 6. Responsibility of officers and members of associations or their organizations for unlawful acts of individual officers, members, and agents.

"No officer or member of any association or organization * * * shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof."

"Sec. 7. Issuance of injunctions in labor disputes; hearing; findings of court; notice to affected persons; temporary restraining order; undertakings.

"No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute * * * except after findings of fact by the court, to the effect—

"(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons * * * making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

* * * * * *

"(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection. * * *"

The trial court found that the evidence was not sufficient to sustain the findings that a present conspiracy existed among the appellees or any of them to unionize the Donnelly Garment factory in Kansas City by violence or threats of violence, and that the threats made in the spring of 1937 by persons other than the appellees that violence would be employed against the appellants in the event a strike was called at the Donnelly Garment Company plant were neither authorized nor ratified by the appellees. Appellants vigorously assail these findings as contrary to all the evidence in the record. We do not reach the issue thus presented. For, granting for the argument that these findings of the trial court are clearly erroneous, appellants were nevertheless not entitled to an injunction on this issue, because of the failure of appellants to make the proof required by section 7(e) of the Norris-LaGuardia Act. The trial court made the following finding:

"Plaintiffs and interveners have failed to show that the police force of Kansas City is either unable or unwilling to furnish adequate protection against any violence which might occur on the picket line or elsewhere if and when a strike occurs at Donnelly, or otherwise to protect plaintiffs' employees who may not be in sympathy with any strike called by International.

The experience in strikes in other cities and the fact that some or all of the strikers may be women does not justify a finding that the police force in Kansas City is unable to furnish protection against any violence which might occur."

No other finding could have been made by the trial court on the evidence in this record.

■ A Federal District Court is without power to issue an injunction in an action growing out of a labor dispute in the absence of an allegation by the plaintiff and a finding by the court, supported by evidence, that local public officers are unable or unwilling to furnish plaintiff adequate. protection against the violence or threat of violence against which the injunction is sought. International Brotherhood of Teamsters, etc., v. International Union, etc., 9 Cir., 106 · F.2d 871, 877; Grace Co. v. Williams, 8 Cir., 96 F.2d 478, 481. The finding that local public officers are unable or unwilling to furnish adequate protection is only one of the several findings; jurisdictional prerequisites for an order of injunction in a labor dispute, required by section 7 of the Norris-La-Guardian Act. But all the findings required under the Act must be made. Milk Wagon Drivers' Union v. Lake Valley Farm Products, Inc., supra 311 U.S. at pages 100–102, 61 S.Ct. 122, 85 L.Ed. 63; Lauf v. E. G. Shinner & Co., 303 U.S. 323, 330, 58 S.Ct. 578, 82 L.Ed. 872; New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 561, 562, 304 U.S. 542, 58 S.Ct. 703, 82 L.Ed. 1012; Fur Workers Union, Local No. 72 v. Fur Workers Union, 70 App.D.C. 122, 105 F.2d 1, 5.

■■ In support of the necessary finding upon the issue under discussion, appellants rely wholly on proof of the failure of police officers in Dallas, Texas, and Memphis, Tennessee, in 1935, and of the police officers in Kansas City in 1937, to prevent actual violence of members and agents of the International against the manufacturers of women's dresses in those cities in strikes then in progress pursuant to the program of ·the International for the organization of the women's garment industry; and upon the testimony of a former member of the Kansas City police force, concerning the impossibility of controlling riotous mobs of women by police action. In discussing this evidence the trial judge pointed out that no strike had

ever been called against the appellants, no act of violence committed against them, and no threat of violence made since 1937; that since the strikes in the garment industry in Kansas City in 1937, which were attended by outrageous acts of violence by striking members of the International, there had been a complete change in the local government in Kansas City and a complete reorganization of its police force; and that the Federal judge who granted appellants' injunction in the action based on the Sherman Act found that the police of Kansas City were able but unwilling to prevent the violence which occurred in Kansas City in strikes in the women's garment industry in 1937. We agree with the trial judge that the evidence of the character relied on by appellants was wholly insufficient to sustain the burden upon them. See Green v. Obergfell, 73 App.D. C. 298, 121 F.2d 46, 52, 138 A.L.R. 258; Wilson & Co. v. Birl, 3 Cir., 105 F.2d 948; Wilson Employees' Representation Plan v. Wilson & Co., D.C.Cal., 53 F.Supp. 23; Heintz Mfg. Co. v. Local No. 515, D.C. Pa., 20 F.Supp. 116; Oswald Co. v. Leader et al., D.C.Pa., 20 F.Supp. 876; Cupples Co. v. American Federation of Labor, D.C. Mo., 20 F.Supp. 894; Carter v. Herrin Motor Freight Lines, 5 Cir., 131 F.2d 557; Knapp-Monarch v. Anderson, D.C.Ill., 7 F. Supp. 332. Compare Cater Construction Co. v. Nischwitz, 7 Cir., 111 F.2d 971; Newton v. Laclede Steel Co., 7 Cir., 80 F. 2d 636; Lake Charles Stevedores v. Mayo, D.C.La., 20 F.Supp. 698. Although the appellants notified the sheriff of Jackson County, Missouri, in which Kansas City is located, and the chief officer of the Kansas City police force of the hearing on the application for injunction, they failed to call either of these officers to the witness stand in support of the allegation that the law enforcement officers then in office were either unable or unwilling to give appellants adequate protection against any acts of violence reasonably to be anticipated. The trial judge was denied the opportunity to ascertain from the testimony of these officers any opinion whatever as to their willingness or their ability to discharge the duties which the law placed upon them. The record is barren of any evidence upon which the trial court could have made the finding requisite to jurisdiction. Appellants offer no excuse for their failure to call these officers, presumably the best informed of all possible witnesses, to the wit-

ness stand. Their failure justifies, if it does not compel, the inference that the testimony of the absent witnesses would have been against them. Goldie v. Cox, 8 Cir., 130 F.2d 695, 719.

### Fraud and Secondary Boycott.

There is no proof in the record that any of the fraudulent acts or threats charged against the appellees, or any of the appellees' actions relied on by appellants as threatening an illegal secondary boycott of the garment companies' customers, were accompanied by violence or threats of violence. Appellants were, therefore, not under the burden in this branch of the action placed upon them by section 7(e) of the Norris-LaGuardia Act. See Wilson & Co. v. Birl, supra 105 F.2d at page 950. Appellants were, however, by section 7(a) of the Act required to prove, and the District Court was required to find, before an injunction against fraud or secondary boycott could issue, that acts constituting the offenses charged had been committed by appellees or their agents with appellees' knowledge and would be continued, or that such acts had been threatened and would be committed unless restrained. The trial court found that no present conspiracy existed among the appellees to compel the appellants to yield to the demands of the International Ladies Garment Workers Union by means of fraud or through an illegal secondary boycott of the retail stores handling the product of the Donnelly Garment Company. We can not say that this finding of fact is clearly erroneous.

On the question of fraud, the evidence clearly established that one of the appellees, Meyer Perlstein, while acting as regional director of the International in charge of its campaign for the organization of appellants, made false and malicious statements regarding the conditions prevailing in the Donnelly Company's plant, and that he gave wide publicity to these falsehoods through advertisements published in the Kansas City papers and by distribution of printed circulars throughout the United States. Under Perlstein's directions agents of the International were supplied with pamphlets containing the false statements invented by him and sent far and wide throughout the country with instructions to deliver them to retail stores which sold the product of the Donnelly Garment Company. These malicious falsehoods were given publicity under Perlstein's direction for the purpose of inducing the customers of Donnelly Garment Company to sever commercial relations with it, and thus to compel the Garment Company to accede to the demands of the International through fear of irreparable damage to its business. Appellees tacitly admit Perlstein's guilt of these fraudulent acts. But this action was brought to trial in the District Court in 1943, and, under the provisions of the Norris-LaGuardia Act, the District Court was without jurisdiction to issue an injunction against fraud merely upon the finding that fraudulent acts had been committed by the appellees or any of them in the past. The court's power to issue an injunction was dependent upon the further finding that unless restrained the fraudulent acts committed in the past would be continued in the future, and, as noted above, the District Court declined to make this necessary finding.

The false representations referred to were made and given publicity by Perlstein in 1937. Their falsity was completely exposed in December 1937 in one of the trials of the action brought by appellants under the Sherman Act. They were never again given publicity by advertisement in the press. There is some evidence to show that the circulars containing these false representations may have been distributed for a time in 1938 among retail stores selling the product of the Garment Company, but there is a sharp conflict in the evidence on the question whether the other appellees had knowledge of Perlstein's action in making the false representations before they were made, or whether the other appellees ratified Perlstein's action after knowledge. There is evidence on behalf of the appellees that, after the falsity of Perlstein's statements concerning appellants was exposed in the trial court in 1937, another circular in which the fraudulent statements were not repeated was prepared by Perlstein and circulated among appellants' customers, in substitution for the first circular. No charge of fraud is made in connection with the distribution of the second circular.

Appellants contend, however, that the appellees discontinued the fraudulent acts charged against them only because compelled to do so by the institution of the action for an injunction. They point to the fact that none of the appellees took the

44

stand at the trial to disavow the fraudulent actions of Perlstein or to give assurance that these actions would not be continued as soon as the restraining hand of the court was lifted.[1] They rely upon the principle that once a conspiracy and its continuation until stopped by the institution of proceedings against it are proved, it must be deemed to continue until the contrary is established; and that the failure of any of the appellees to disavow on the witness stand the acts charged against them justifies the inference that the unlawful acts which brought about the action for an injunction will be continued ur'ess restrained. United States v. Perlstein, 3 Cir., 126 F.2d 789, 798; Local 167 of International Brotherhood of Teamsters v. United States, 291 U.S. 293, 298, 54 S.Ct. 396, 78 L.Ed. 804; Interstate Circuit v. United States, 306 U.S. 208, 226, 59 S.Ct. 467, 83 L.Ed. 610; Goldie v. Cox, supra. The infirmities in this argument are that appellants assume a conspiracy which the trial court found on substantial evidence did not exist; and that they ignore the finding of the trial court, supported by substantial evidence, that the unlawful acts of which they complain were discontinued upon the exposure of their falsity, and that the evidence failed to show any reasonable probability of their continuation. The injunction against fraud was properly denied. Champion Spark Plug Co. v. Reich, 8 Cir., 121 F.2d 769, 772. "When an injunction is brought to restrain a continuing injury and, after suit is brought the defendant claims to have abandoned the course of conduct complained of, the question for the court to determine is whether the illegal conduct has in fact been abated or whether the menace to the plaintiff's rights still exists. If the menace exists an injunction should be granted; if not, it should be denied. * * * The question is one of fact for the determination of the court at the time the final decree is entered."

The issues arising out of the charge of threats of illegal boycott of the retail stores handling the product of the Donnelly Garment Company were, like the issues arising on the charge of fraud, decided by the trial court upon conflicting evidence. On the finding that none of the appellees authorized the threats of a boycott of the Garment Company's customers, which may have been made by certain emissaries and agents of the International, or ratified them after actual knowledge, the court concluded that, because of the provisions of section 4 of the Norris-LaGuardia Act, an injunction against the so-called secondary boycott should not issue. Section 4 of the Act provides that no court of the United States shall have jurisdiction to issue any restraining order or injunction in any case growing out of a labor dispute to prohibit any person or persons participating or interested in the dispute from "(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence." There was no suggestion in the evidence that any acts of violence were done or threatened by any of the emissaries of the International, who called upon the retail stores handling the products of the Garment Company and urged them to sever commercial relations with the Garment Company; and, as noted above, the court found that the fraudulent representations made by these emissaries of the International to the customers of the Donnelly Garment Company were discontinued after 1937 and that there was no probability of their continuance. The questions on this branch of the case, therefore, are whether the court's finding of fact was clearly erroneous, and, if not, whether its construction of section 4(e) of the Norris-LaGuardia Act was correct.

There was evidence from the operators of retail stores who sold the women's garments manufactured by the Donnelly Company that the emissaries of the International who called on them threatened the stores with boycott unless they discontinued the purchase and sale of the Donnelly Garment Company's product. Some of the interviews given to the press by Mr. Dubinsky, president of the International, and probably by some of the other appellees, contain language susceptible of interpretation as a threat to boycott all the retail stores selling Donnelly garments. Some of the articles published in "Justice", the official publication of the International, edited by one of the appellees, read by all of them, and widely circulated among the members of the International contain similar language. These articles, however, when read in their entirety were more reasonably to be interpreted as statements of

[1] The testimony of Dubinsky and Perlstein in prior trials was, however, introduced in evidence on this trial.

a plan of the appellees responsible for them merely to urge the retail stores in question not to patronize the Donnelly Garment Company, to publicize the labor dispute out of which the action arose, and to urge the public not to purchase from the retail stores the garments manufactured by the Donnelly Company. While there were references in the publicity of the International to "picketing retail stores" which refused to discontinue commercial relations with the Donnelly Garment Company, the proof shows that such picketing as did occur was limited to the patrol of the entrances of a retail store in St. Louis by pickets who carried signs stating that the Donnelly Garment Company was unfair to union labor, and advising the customers of the store not to purchase garments manufactured by it. There was also testimony by the appellee Dubinsky[2] that picketing of retail stores, as distinguished from the boycott of a product of any company which the International was attempting to organize, was contrary to the policy of the International and never in its history knowingly permitted. Emissaries of the International sent out by Perlstein denied that they threatened a boycott of the retailers they called on, as distinguished from the boycott of the products of the Donnelly Company by an appeal to the public not to purchase them. We conclude that the weight of the testimony supports the trial court's finding of fact on this issue, and that the court correctly held that "A fair construction of this section (§ 4 (e)) of the Act indicates that Congress intended that the facts of a labor controversy might be given publicity by the patrolling of the streets or otherwise with banners and signs, and that such publicity might include or contain a request to the public not to buy the products of the factory where the labor dispute exists." [55 F.Supp. 601] Taxi-Cab Drivers Local Union No. 889 v. Yellow Cab Operating Co., 10 Cir., 123 F.2d 262; Levering & Garrigues Co. v. Morrin, 2 Cir., 71 F.2d 284; Carter v. Herrin Motor Freight Lines, supra, 131 F.2d at page 560; Wilson & Co. v. Birl, supra. Here the appellants rely on Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196, and Bedford Cut Stone Co. v. Journeyman Stone Cutters' Association, 274 U.S. 37, 47 S.Ct. 522, 71 L.Ed. 916, 54 A.L.R. 791, decisions which came down before the passage of the Norris-LaGuardia Act. We agree with the trial court that these opinions may not be accepted as law on the question now under discussion in view of the provisions of the Norris-LaGuardia Act. See United States v. Hutcheson, supra; Milk Wagon Drivers' Union v. Lake Valley Farm Products, Inc., supra.

In conclusion it may not be amiss to say that nothing in the Norris-LaGuardia Act denies to the Federal courts the power to issue an injunction in an action growing out of a labor dispute where the evidence clearly establishes the requisite jurisdictional findings. Fraud and violence are as unlawful and as reprehensible in a labor controversy as elsewhere. But in an action for an injunction in a labor dispute the trial court is required to make certain findings as a prerequisite to the power and jurisdiction of the court to grant an injunction. The burden is upon the plaintiff to establish the findings by clear evidence. Since we conclude that the trial court's findings against the appellants in this case on issues necessary to its power and jurisdiction to enjoin the appellees are not clearly erroneous, the decree appealed from is affirmed.