**SOUTHWESTERN BELL TELEPHONE COMPANY**

v.

**COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, and Local 6222.**

**Civ. No. 71–H–254.**

United States District Court,
S. D. Texas,
Houston Division.

.March 26, 1971.

James Shatto, Houston, Tex., for plaintiff.

William N. Wheat, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

SEALS, District Judge.

The oral and informal findings made by the court from the bench at the conclusion of the evidentiary hearing on the 15th day of March, 1971, are amended and supplemented by the following:

The Court regrets that the parties, for reasons best known to them, did not meet in person and draft a proposed pretrial order as ordered by the court.

From the two proposed pretrial orders that were submitted by each party, it appears to the court that the plaintiff, the Southwestern Bell Telephone Company, contends as follows:

1. That on July 17, 1968, the plaintiff and the defendant Communications Workers of America entered into a collective bargaining agreement relating to the Traffic Department of Southwestern Bell entitled 1968 TRAFFIC AGREEMENT and into a further collective bargaining agreement affecting all departments called AGREEMENT OF GENERAL APPLICATION, which agreements were in full force and effect at all times material to this dispute.

2. That the AGREEMENT OF GENERAL APPLICATION Article II, styled "Service Interruption", is a no-strike clause and contains provisions establishing mandatory grievance and binding arbitration procedures to resolve all employee complaints and grievances.

3. That on February 26, 1971, the defendant union breached the collective bargaining agreement when, in protest of a system of part-time hours and seniority to be instituted at the plaintiff's building at Weslayan and Alabama Streets in Houston, Texas, (the Alabama facility) the union placed pickets around the building which has had the effect of preventing the plaintiff from remodeling the building in preparation for the new directory assistance system to be handled in part by the part-time employees.

4. That under the agreements, any complaint concerning the hours assigned the part-time employees and the separate seniority system for part-time employees should have been submitted to the procedures for grievance and arbitration; and that the Company is prepared to hear any such grievance.

5. That this breach by the Union has damaged the Telephone Company and will cause immediate and irreparable harm.

6. That the activity in breach of the collective bargaining contract should be enjoined and that the Union be ordered to pay damages.

7. That despite the Norris-La-Guardia Act prohibition of the issuance of injunctions in labor disputes, 29 U.S.C.A. § 104, such an injunction will lie where a collective bargaining contract containing a no strike clause and mandatory grievance or arbitration procedure is violated, 29 U.S.C.A. § 185 (National Labor Relations Act, Sec. 301), Boys' Markets, Inc. v. Retail Clerk's Union 398, U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

From the proposed pretrial order that was filed by the defendants and from the statements made in the conference prior to the evidentiary hearing, it appears to the court that defendant contends as follows:

1. That on January 28, 1971, without previously bargaining with the Union, the plaintiff telephone company announced to the Union the institution of a new system of hiring and seniority for its Alabama facility utilizing area housewives on a part-time basis.

2. That this modification of the collective bargaining contract was a breach of the contract and an unfair labor practice excusing any violation of the no strike clause, Mastro Plastics Corp. v. N.L.R.B., 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309, reh. den. 351 U.S. 980, 76 S.Ct. 1043, 100 L.Ed. 1495 (1955).

3. That the new system would deprive full-time employees of valuable seniority rights secured to them under their contract with the telephone company, 1968 TRAFFIC AGREEMENT, Arts. V and XIX, and favor the recently hired part-time employees by precluding full-time employees from selecting hours previously available to them.

4. That a dispute over the institution of the new system of hiring and seniority was not within the mandatory grievance and arbitration clauses of the contract, therefore making the rule of *Boys' Markets, supra,* inapplicable.

The court finds that the system of part-time hiring and seniority is entirely new and a complete departure from the present system used by Southwestern Bell in Houston, and for that matter in Texas (Tr. 95). As such, it is a prospective modification of the hours of employment agreed to by the parties in their collective bargaining agreements, Articles II, IV and V of the 1968 TRAFFIC AGREEMENT, and is a subject for negotiation, but not for arbitration within the terms of Article V of the 1968 AGREEMENT OF GENERAL APPLICATION.

■ The party seeking an injunction in a labor dispute has the burden of establishing facts which entitle him to relief. Donnelly Garment Co. v. Dubinsky, 154 F.2d 38 (8 CA, 1946). It appears to the court that the plaintiff telephone company has failed to establish by a preponderance of the evidence that irreparable harm will be caused by the picketing and work stoppage. The implementation of the plaintiff's program will be delayed, but not entirely frustrated by the negotiation process.

From the examination of Mr. Frank Pyle, West Houston Division Traffic Superintendent, and sole witness of the telephone company, it appears clear to the court that this new type of part-time employee and the new seniority system had to be, and was, deliberated on for some time by the company's management (Tr. 43–44). This hearing could have been avoided if the company had decided to discuss this issue months ago with the Union either when they acquired the building or when they began to remodel it, instead of dropping it on the defendants like a bombshell.

The court is not convinced by a preponderance of the evidence that the plaintiff company would suffer irreparable damages especially when viewed in relation to the harm that would fall on the Union. It appears certain from the testimony that during the time the company and the Union arbitrated this issue, the company would implement its plan to hire part-time employees under the new seniority system (Tr. 78, 101–102, 109). This could, and probably would, place some part-time employees in a more advantageous position than the full-time employees. The testimony of the company's witness is confusing on this point. At one point, Mr. Pyle answered that it was not the company's intention to allow two part-time workers to displace a full-time worker from her regular eight hour shift (Tr. 52–54). Later on, he said that the company intended to keep Saturday and Sunday tours available to part-time employees, but not to full-time employees as before (Tr. 55–56); and that full-time employees would not have the opportunity to choose their shifts before the part-time employees filled up the remaining spots on the schedule, since the work schedules available to the full-time and part-time employees would be separate (Tr. 57 and 90–95). Finally, the witness conceded that it would be possible to arrange the schedules concurrently and that then the two part-timers could fill what had been one full-time slot (Tr. 95).

As outlined in the testimony, it seems that under the existing system part-timers worked three four-hour shifts during the evening and night hours seven days a week and could compete on an equal basis with full-time employees for the regular (eight-hour) full-time shift on either Saturday or Sunday. The other working hours were allocated to

full-time, or regular, shifts. This is compatible with article II of the 1968 TRAFFIC AGREEMENT which establishes an eight hour tour as the full-time tour and provides that full-time tours may be scheduled on Saturdays and Sundays, and with article IV(a) which establishes five classes of full-time tours: morning-afternoon, morning-evening; afternoon-evening; evening; and night. Under articles V(a) and XIX seniority would determine the actual assignment of hours. Article IV(b) permits the assignment of part-time tours, but there is no designation of days which are reserved to the part-time force or excluded from the full-time work schedule.

The proposed change would continue the present part-time shifts during the week and would take Saturday and Sunday from the full-time schedule and put them on the part-time schedule (Tr. 42, 55–56, 79). This would materially alter the hours of employment available to the employees since a full-time employee could no longer choose to work on Saturdays or Sundays to make up her forty-hour week. Such an alteration in the hours or conditions of employment is a subject for negotiation.

Furthermore, the court finds that the present collective bargaining agreement will expire at midnight on the 16–17th of July, 1971. The new contract negotiations will logically include the issues of the new separate work schedules and seniority lists for part-time employees. If the court should compel the parties to arbitrate, it is clear that this arbitration will not be concluded before the date of the expiration of the present contract.

The plaintiff telephone company contends that this case is governed by the rule laid down in Boys' Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) which reversed Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), and held that under certain circumstances a federal district court could enjoin a strike in breach of a no-strike clause obligation where the collective bargaining contract contained a clause binding the parties to arbitrate the dispute concerning which the strike was called. The defendant union contends that the Boys' Markets rule is inapplicable, and further that the company committed an unfair labor practice which excused the Union from the no-strike clause in the contract. The Union has filed an unfair labor practice complaint with the N.L.R.B. This court makes no determination of this second defense. The existence or nonexistence of an unfair labor practice is a matter for the Board not for the court. It is clear, however, that merely filing a complaint with the Board will not prevent the court from deciding whether the arbitration clause has been breached and enjoining the strike on that basis. In Lodge No. 12, Dist. No. 37, International Association of Machinists v. Cameron Iron Works, 257 F.2d 467 (5 CA, 1958) cert. den., 358 U.S. 880, 79 S.Ct. 120, 3 L.Ed.2d 110 (1958) the Fifth Circuit held that a party could bind itself to arbitrate what would otherwise be a matter for an unfair labor practice complaint to the N.L.R.B. Therefore, whether an unfair labor practice has been committed is really immaterial to the issue of arbitrability.

The case turns on the applicability of the Boys' Markets rule. It is clear that the Supreme Court is not discarding the anti-injunction provisions of Norris-LaGuardia. It is protecting the contract rights secured to the parties by Section 301 of the National Labor Relations Act, 29 U.S.C.A. § 185. The Court specifically held that an injunction could not issue "unless and until" it was decided that injunctive relief was appropriate despite the Norris-LaGuardia Act, 398 U.S. at 253, 90 S.Ct. at 1594, 26 L.Ed.2d at 212. Two tests must then be met. First, the parties must be bound by the contract to arbitrate the dispute; and as a condition for the issuance of the injunction the employer

should be ordered to arbitrate (this the company has agreed to do). Second, the injunction must be justified under ordinary principles of equity. Equitable considerations include whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the Union from its granting.

The arbitration clause involved is contained in article V of the 1968 AGREEMENT OF GENERAL APPLICATION. It might otherwise include this dispute except that article V section 1(a) excludes from arbitration prospective modifications or amendments to the agreement.

This new system is such a modification of the hours of work, arrangement of tours, assignment of hours and reliance upon seniority established in articles II, IV, V and XIX of the 1968 TRAFFIC AGREEMENT.

■ Under the terms of the collective bargaining agreement the dispute is not one which either party is bound to arbitrate. It should be noted that the agreement has been reopened several times to renegotiate the wage scale and that the current scale is stapled to the back-cover of the agreement (Tr. 36). Reopening the contract to discuss the hours of work and arrangement of tours would have been possible and more satisfactory than the present dispute.

As to the considerations of equity, this court has found that the company will not be irreparably harmed by the denial of injunctive relief. It has been delayed in preparing the new building and the quality of telephone service may have diminished. However, the company need only put off the *implementation* of the new schedules of part-time hours and seniority until it can be discussed fully with the Union. Once this is done the preparation of the building and the training of both full-

time and part-time employees to handle the equipment can resume. If the Union is enjoined and the parties are ordered to arbitration, the company plans to institute the system immediately rather than wait for the decision of the arbitrator. This would seriously damage the Union in the eyes of the employees since job security is at the core of Union loyalty. Denial of the injunction will only delay implementation of the scheduling and need not delay the preparation and use of the Alabama facility. Equity does not require an injunction under this set of facts.

Therefore, the plaintiff's application for a temporary restraining order and a temporary injunction is denied at this time and the case will remain on the docket for further consideration.